# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br><br>WILSON CREEK ENERGY, LLC, *et al.*,[1]<br><br>Debtors. | Case No.: 25-70001-JAD<br><br>Chapter 11<br><br>*Jointly Administered* |
| WILSON CREEK ENERGY, LLC, *et al.*,<br><br>Movant,<br><br>v.<br><br>NO RESPONDENT. | Related to Document No. 116<br><br>Hearing Date: March 12, 2025<br><br>Hearing Time: 9:00 a.m.<br><br>Response Deadline: February 24, 2025 |

## COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION'S OBJECTION TO SALE MOTION

The Commonwealth of Pennsylvania, Department of Environmental Protection ("PA DEP" or "the Department"), through the undersigned counsel, hereby files this objection to *Debtors' Motion for Entry of Orders (A) Approving Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (C) Authorizing the Debtors to Designate Stalking Horse Bidder and Approving Proposed Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve Sale of the Debtors' Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Wilson Creek Energy, LLC (6202); Wilson Creek Holdings, Inc. (7733); Maryland Energy Resource, LLC (5299); Mincorp Acquisition Corp. (4858); Mincorp Inc. (5688); PBS Coals, Inc. (2413); Roxcoal, Inc. (3768); Quecreek Mining, Inc. (1745), Croner, Inc. (0529); Elk Lick Energy, Inc. (8551); and Corsa Coal Corp. (0027). The Debtors' address is 1576 Stoystown Road, Friedens, Pennsylvania 15541.

*Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* (Doc. No. 116) ("Sale Motion" or "Motion") and, in support thereof, states as follows:

## SUMMARY OF OBJECTION

1. In their Sale Motion Debtors seek blanket authorization for a sale or sales of all or substantially all of their assets without identifying the assets to be sold, the terms and conditions of the sale, the purchase price, or proposed distribution of proceeds from the sale, among other essential information for parties in interest to consider. PA DEP generally objects and reserves its right to object to any specific sale or sales to the extent that they would unlawfully impair PA DEP's ability to enforce environmental laws designed to protect public health and safety against Debtors or purchasers, or to the extent any proposed sale order purports to distribute sale proceeds without assurance of Debtors' compliance with environmental obligations.

## BACKGROUND

2. PA DEP is an executive agency with the duty and authority to administer and enforce the environmental and public health and safety statutes and regulations of the Commonwealth of Pennsylvania, including but not limited to The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001; the Surface Mining Conservation and Reclamation Act, Act of Dec. 18, 1992, P.L. 1384, *as amended*, 52 P.S. §§ 1396.1-1396.31; the Bituminous Mine Subsidence and Land Conservation Act, Act of Apr. 27, 1966, P.L. 31, *as amended,* 52 P.S. §§ 1406.1-1406.21; the Coal Refuse Disposal Control Act, Act of Feb. 1, 2010, P.L. 126, *as amended*, 52 P.S. §§ 30.51-30.66 (collectively, "Pennsylvania Mining Laws"); and the regulations promulgated under those statutes ("Regulations").

3. The Pennsylvania Mining Laws were enacted pursuant to the Commonwealth's police power to conserve and protect land affected by mining, eliminate hazards to health and

2

safety, and prevent pollution to waters of the Commonwealth. 52 P.S. § 1396.1; 52 P.S. § 1406.2; 52 P.S. § 30.51; 35 P.S. § 691.4.

4. Pennsylvania's regulation of coal mining activities is overseen by the federal Office of Surface Mining ("OSM") through provisions of the federal Surface Mining Control and Reclamation Act ("SMCRA"). SMCRA is designed to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 268 (1981) (quoting 30 U.S.C. § 1202(a)). In enacting SMCRA, Congress found that:

> [M]any surface mining operations result in disturbances of surface areas that burden and adversely affect commerce and the public welfare by destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural, and forestry purposes, by causing erosion and landslides, by contributing to floods, by polluting the water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property by degrading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water, and other natural resources.

*Id*. at 277-78 (quoting 30 U.S.C. § 1201(c)).

5. SMCRA allows a state to assume jurisdiction over the regulation of surface coal mining if the state can administer that program according to federal standards. *See* 30 U.S.C. § 1253. When a state program is approved by OSM, the state achieves "primacy" over its surface coal mining regulatory program. The Commonwealth achieved primacy in 1982. 47 FR 33050, 33076 (July 30, 1982). To keep its jurisdiction over the regulation of coal mining activities, the Commonwealth must maintain its regulatory program in accordance with the requirements of SMCRA and regulations issued by OSM. *See* 30 U.S.C. §§ 1253(a)(1) and (7) and 1255(a); *Pa. Fed'n. of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 317 (3d Cir. 2002).

3

**<u>Pennsylvania's Permitting and Bonding Requirements</u>**

6. The Pennsylvania Mining Laws and Regulations comprehensively regulate mining in the Commonwealth. Before commencing mining activities in Pennsylvania, mine operators must apply for and obtain a mining license and permit authorizing the proposed activities. 52 P.S. §§ 30.54(a), 1396.3a(a)(1), 1406.5(a).

7. Operators also must provide a bond payable to the Commonwealth and securing the operator's compliance obligations associated with permitted activities, including land reclamation, water treatment, and the replacement of water supplies affected by mining. 35 P.S. § 691.315(b); 52 P.S. §§ 30.56, 1396.4(d), 1406.5(b), 1406.6(b). As an alternative to bonds, operators may secure their water treatment obligations through site-specific water treatment trusts. 52 P.S. § 1396.4(d.2).

8. Bond amounts must cover the total costs to the Commonwealth for completing an approved reclamation plan. 52 P.S. § 1396.4(d); *see also Hess*, 297 F.3d at 319 (citing 30 U.S.C. § 1259(a)). Required bond amounts are adjusted by PA DEP from time to time to account for changes in reclamation costs. 25 Pa. Code § 86.152(a).

9. The Pennsylvania Mining Laws also govern the transfer of permits when mining operations are sold. Under PA DEP's Regulations, the rights granted under a permit may not be transferred, assigned, or sold to another unless the successor operator assumes the liability for reclamation, water pollution, planting, and other responsibilities under the law, regulations, and the terms and conditions of the permits from the date of original issuance of the permits. 25 Pa. Code § 86.56(c). In addition, an operator of an uncompleted mining operation may not be released from liability unless the successor operator assumes all liability for reclamation of the land affected by the former operator. 52 P.S. § 1396.18a. A permit may not be transferred to a successor operator

4

unless the successor operator has obtained a license from the Department. *See* 52 P.S. § 1396.3a(a)(1).

10. Before a coal mining permit can be transferred, among other requirements, the successor operator must post a new bond in an appropriate amount determined by the Department. 25 Pa. Code §§ 86.56(c)(3)(iv) and 86.167.

**Debtors' Mining Operations and Environmental Compliance Obligations**

11. PA DEP has issued over forty mining permits and associated authorizations under various federal and state statutes to Debtors, Wilson Creek Energy, LLC, RoxCoal, Inc., PBS Coals, Inc., Croner, Inc., Quecreek Mining, Inc., and Elk Lick Energy, Inc. Debtors' active and inactive operations in Pennsylvania include 21 surface mines, 10 underground mines, 5 coal refuse disposal areas, and 3 coal preparation plants, all located within Somerset County.

12. Debtors have significant ongoing and outstanding environmental obligations under the Pennsylvania Mining Laws and their permits, including land reclamation, water treatment, and water supply replacement.

13. Debtors' outstanding land reclamation obligations include reclaiming numerous surface mines, underground mines, and coal refuse disposal areas at which coal extraction and coal refuse disposal has ceased. 25 Pa. Code §§ 87.140 (surface mines), 89.81 (underground mines), and 90.168 (coal refuse disposal). Debtors also must reclaim several active surface mines, underground mines, coal preparation plants, and coal refuse disposal areas upon cessation of mining, coal processing, and coal refuse disposal activities. The total cost of outstanding land reclamation obligations for Debtors' mining operations exceeds $66 million. The failure to reclaim Debtors' mine sites could leave unsealed mine openings, dangerous highwalls, and other hazards that threaten public health, safety, and the environment.

5

14. Debtors also treat pollutional discharges at numerous active and inactive mining sites, with significant annual water treatment costs. Although Debtors have established three post-mining pollutional treatment trusts with a total corpus of over $30 million to provide for future water treatment needs, the trusts are collectively underfunded by over $10 million. In addition, Debtors have not implemented permanent water treatment systems or provided mandated financial assurance for over $30 million in anticipated water treatment needs for sites that are not covered under any treatment trust. The failure to treat pollutional discharges from Debtors' mining sites would degrade waters of the Commonwealth, some of which have recovered from pollution caused by other operators' legacy mining operations and are frequently used by the public for recreation and fishing.

15. Debtors have failed to provide operation and maintenance ("O&M") bonds for sixteen contaminated water supplies valued at $524,561.00, *see Commonwealth Motion for Order that Automatic Stay Does Not Excuse Debtor's Compliance with State's Environmental Laws*, Doc. 238, and at least thirteen other adversely affected supplies for which Debtors have not even submitted O&M cost calculations, as required by PA DEP's Regulations. 25 Pa. Code § 87.119a(g). The failure to provide for these O&M costs would shift the costs to the water supply users and their families who were harmed by Debtors' mining operations.

16. Debtors have ongoing compliance obligations under several Consent Orders and Agreements, which are orders of the Department issued pursuant to the Pennsylvania Mining Laws. The active Consent Orders include: (1) a March 1999 Consent Order requiring operation of the Clear Run Treatment System and associated financial assurance, (2) a March 2012 Consent Order, amended in March 2019, requiring operation of and financial assurance for numerous water treatment systems, (3) a March 2018 Consent Order requiring operation of and financial assurance for treatment systems for discharges from Trent Mine and Acosta No. 2 Mine, (4) a January 2018

6

Consent Order for the implementation of a compliance plan to correct violations at the Barbara No. 1 & 2 Mines, and (5) an April 2022 Consent Order requiring the construction and operation of a treatment system for discharges from the Kimberly Run Mine.

**Proposed Sales and Asset Purchase Agreement**

17. Debtors propose to sell all or substantially all of their assets pursuant to a competitive bidding process. Motion, Doc. 116, at 7; Bidding Procedures Order, Doc. 193.

18. According to the Debtors' Bidding Procedures Order, a Potential Bidder of Debtors' assets, among other criteria, must:

> (i) (a) take transfer of or obtain permits for the mining operations to be acquired, (b) assume all associated and applicable environmental obligations with respect to the mines subject to the Bid to the extent required under applicable nonbankruptcy law, and (c) obtain assignment of or replace the reclamation surety bonds associated and other financial assurance associated with such permits, and (ii) provide evidence of (a) the Potential Bidder's ability to satisfy the conditions set forth in clause (i)….

Doc. 193 at 24.

19. With their Motion, Debtors submitted a Proposed Asset Purchase Agreement ("Proposed APA"), which Debtors intend to use as a model agreement from which specific sale agreements will be negotiated. Doc. 193 at 4. Under the Proposed APA,[2] the Assumed Liabilities include "all Reclamation obligations to the extent related to the Purchased Assets" and "all Liabilities in respect of the Seller Permits (other than the Excluded Permits) from and after Closing." The Purchased Assets include the Seller Permits but exclude any Excluded Permits. Doc. 193 at 43. Excluded Permits are Retained Assets under the Proposed APA. Doc. 193 at 44.[3] The Seller Permits and Excluded Permits are not identified in the Proposed APA.

---

[2] Capitalized terms have the meaning ascribed in the Motion.
[3] There appears to be a typo in the definition of "Excluded Permits," which is defined as "means [sic] and any U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives licenses or permits." Doc. 193 at 37.

7

20. The Proposed APA also purports to provide purchasers certain rights with respect to permit transfers and the replacement of bonds that conflict with Pennsylvania Mining Laws. *See* Doc. 193 at 22-24. For example, under the Proposed APA purchasers are not "obligated to accept any material amendment to the terms of any Seller Permits or any additional conditions with respect to any Seller Permits," *id.* at 55, and are obligated to replace bonds only in the bond amount to be identified in the Proposed APA. *Id.* at 56. The Pennsylvania Mining Laws, however, may require additional terms and conditions upon a permit transfer, including the modification of bond amounts. *See supra*, ¶ 10.

21. As of this filing, Debtors have not identified any proposed sales of assets or identified what permits and associated liabilities would be included in any sales. Although the Bidding Procedures Order included Stalking Horse Bidder Protections and a deadline to designate a stalking horse bidder, Debtors did not designate a stalking horse bidder by the deadline of February 14, 2025.

22. Further, despite no specific asset sales having been proposed and no indication of whether all assets will be sold, the Bidding Procedures Order also addresses the distribution of proceeds from asset sales:

> The net sale proceeds of the sale, subject to carve-outs for any Bidding Protections afforded any Stalking Horse Bidder, shall be paid to the DIP Lender, KeyBank, and other prepetition secured lenders at closing for application to their respective contractually owed debt in the order of their priority without further order from the Court. Any proceeds in excess of the amounts required to pay the DIP Lender, KeyBank, and any other prepetition secured lenders in full will be held by the Debtors pending further order of the Court.

Doc. 193. at 16-17.

**OBJECTION**

I. **PA DEP Objects to Any Sale Where the Purchaser Does Not Assume Applicable Environmental Compliance Obligations.**

23. Any sale order must clearly and accurately address the scope of environmental compliance obligations that a purchaser will assume in the sale. The Proposed APA does not.

24. For example, the Proposed APA purports to require that purchasers of Purchased Assets and Seller Permits assume "all Liabilities in respect of the Seller Permits (other than the Excluded Permits) *from and after Closing*." Doc. 193, at 45 (emphasis added). Under Pennsylvania Law, however, for a successor operator to take a transferred permit, the operator must assume all liability under the permits from "*the date of the original issuance of the permits*." 25 Pa. Code § 86.56(c)(2).

25. Bankruptcy law does not authorize the release of any entity of any police and regulatory liability to a governmental entity as the owner or operator of property that that entity owns or operates after the date of entry of any court orders approving sales. *In re General Motors Corp.*, 407 B.R. 463, 508 (Bankr. S.D.N.Y. 2009) (owner of contaminated property acquired in bankruptcy is responsible for environmental issues "existing even at the outset of the acquirer's ownership"); *In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992) (environmental liability runs with the land).

26. Debtors' environmental compliance obligations are not "claims," and thus cannot be discharged through bankruptcy. *See In re Torwico Elecs., Inc.*, 8 F.3d 146, 150 (3d Cir. 1993) (environmental cleanup obligations not a "claim").

27. Similarly, Section 363(f) of the Bankruptcy Code, 11 U.S.C. § 363(f), does not allow purchasers to acquire debtor property free and clear of the obligation to comply with environmental law. Section 363(f) permits property to be sold free and clear of an entity's interest in such property only if at least one of five conditions is satisfied:

9

    1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    2)     such entity consents;

    3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    4)     such interest is in bona fide dispute; or

    5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

28.     For any Debtors-proposed sale that does not transfer environmental compliance obligations to the purchaser consistent with the Pennsylvania Mining Laws, none of the conditions of a Section 363(f) are satisfied. First, applicable nonbankruptcy law, including the Pennsylvania Mining Laws, do not permit a sale free and clear of an owner or operator's environmental obligations. *See supra* ¶ 9. Second, PA DEP does not consent to a sale free and clear of environmental obligations. Third, Debtors' environmental obligations are not a lien. Fourth, the environmental obligations are not in dispute. Fifth, PA DEP cannot be compelled to accept a monetary satisfaction in lieu of the purchaser's compliance with environmental law. *See, e.g., In re Mark IV Indus., Inc.*, 438 B.R. 460, 470 (Bankr. S.D.N.Y. 2010), *aff'd*, 459 B.R. 173, 186 (S.D.N.Y. 2011) (Bankruptcy Code does not require a governmental agency entitled to an equitable remedy to select a suboptimal remedy of money damages, citing *In re Davis*, 3 F.3d 113, 116 (5th Cir. 1993)); *see also Zerand-Bernal, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) ("[N]o one believes…that a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale…[or]…to immunize such buyer from all state and federal laws that might reduce the value of the assets bought from the bankrupt."); *In re Chateaugay Corp.*, 944 F.2d 997, 1008 (2d Cir. 1991) (government cannot be compelled to accept monetary satisfaction of injunctive obligation).

10

29. Accordingly, the Court should approve a sale of assets *only if* the purchaser assumes all liabilities that arose from the date of original issuance of any permit that covers the purchased assets.

30. Moreover, the Bankruptcy Code does not authorize the Debtors or purchasers to short circuit the Commonwealth's legal requirements for the transfer of permits and replacement of bonds, as is suggested in the Proposed APA. Any sale order must preserve the Commonwealth's ability to enforce applicable permitting and bonding requirements.

31. Although the Bidding Procedures Order and Proposed APA address in general terms the permits and liabilities that must be assumed in a transaction, PA DEP cannot evaluate whether a specific transaction would unlawfully impair the agency's ability to enforce its police and regulatory powers against Debtors or purchasers without knowing the assets being sold and the liabilities being transferred. Until such information is adequately disclosed by the Debtors, PA DEP reserves its right to object to any specific transaction that Debtors may propose.

32. To address general deficiencies in the Proposed APA and without regard to specific transactions and whether such transactions are objectionable, any proposed sale order should, at a minimum, include the following language:

> Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

**II.     PA DEP Objects to Any Proposed Sale Order That Would Distribute Sale Proceeds Without Compliance with Environmental Obligations.**

33. The Department also reserves its right to object to any proposed sale order that purports to distribute sale proceeds without addressing Debtors' compliance with state and federal environmental and health and safety obligations necessary to protect public health and the environment, including but not limited to Pennsylvania Mining Laws and Regulations.

34. A debtor-in-possession must manage estate property in compliance with valid state laws. 28 U.S.C. § 959(b); *Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) (holding trustee must comply with environmental laws of state and "may not maintain a nuisance, pollute waters of the State, or refuse to remove the source of such conditions"); *In re Jager*, 609 B.R. 156, 161 (Bankr. W.D. Pa. 2019) ("debtors-in-possession are required to comply with environmental laws because bankruptcy, as a general matter, is no excuse for failure to comply").

35. Further, a debtor cannot "abandon property in contravention of state or local laws designed to protect public health or safety." *Midlantic Nat. Bank v. N. J. Dept. of Envtl. Protec.*, 474 U.S. 494, 502 (1986); *see also Dept. of Envtl. Res. v. Conroy*, 24 F.3d 568, 569 (3d Cir. 1994) (owner and operator could not have escaped remediation obligation by abandoning the hazardous property in question).

36. Here, given Debtors' substantial outstanding environmental compliance obligations and limited funds, a partial sale of Debtors' assets that results in distributions to creditors without assuring compliance with Debtors' environmental obligations could work a *de facto* abandonment of the remaining assets in contravention of the Pennsylvania Mining Laws, which are "reasonably designed to protect the public health or safety from identified hazards." *Midlantic*, 474 U.S. at 507.

37. Compliance with state police power laws reasonably designed to protect public health and safety and the environment must be prioritized and assured before any sale proceeds are distributed to any creditors. *See Midlantic*, 474 U.S. at 505 ("Congress has expressly provided

12

that the efforts of the trustee to marshal and distribute the assets of the estate must yield to governmental interest in public health and safety"); *Matter of Envtl. Waste Control, Inc.*, 125 B.R. 546, 552 (N.D. Ind. 1991) (secured creditor's claim on estate assets must yield to debtor's legal obligation to conduct environmental cleanup of estate property).

38. The Court should not approve a proposed sale that benefits a select group of creditors at the expense of environmental compliance, especially outside the context of a Chapter 11 plan subject to the notice and disclosure requirements of 11 U.S.C. §§ 1123 and 1125. *See In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983) (reversing pre-plan confirmation Section 363(b) sale of valuable assets and noting importance of consideration of whether plan proceedings are expected in near future); *In re On-Site Sourcing, Inc.*, 412 B.R. 817, 824-25 (Bankr. E.D. Va. 2009) (invalidating parts of pre-plan confirmation Section 363 sale that subverted parties' rights under Code's plan confirmation provisions).[4]

39. Allowing a debtor to evade or ignore environmental compliance obligations while siphoning off its limited assets for the exclusive benefit of a select group of creditors creates a dangerous precedent and incentive and effectively allows bankruptcy to become "a sanctuary for environmental wrongdoers," which the Third Circuit warned against. *U.S. v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988); *Jager*, 609 B.R. at 161.

40. Here, Debtors should not be permitted to sell part of their assets and distribute proceeds of the sale directly to certain creditors, in effect reallocating limited estate assets sorely needed by the Debtors to perform their outstanding compliance obligations, resulting in violations of environmental law and threats to the environment and public health and safety.

---

[4] Should such transactions be approved, the Debtors likely would be unable to confirm a plan pursuant to 11 U.S.C. § 1129, resulting in the case being dismissed or converted. A plan that fails to provide adequate means for its implementation and compliance with applicable legal requirements – including environmental obligations – is not feasible or proposed in good faith. *See* 11 U.S.C. §§ 1123(a)(5), 1129(a)(1), 1129(a)(3), and 1129(a)(11).

13

## **RESERVATION OF RIGHTS**

41. The Department reserves all rights to be heard on these matters at the Sale Hearing and reserves all rights to supplement this Objection as to any specific transaction that may be proposed in advance of the Hearing.

## **CONCLUSION**

For the foregoing reasons, the Department generally objects to the approval of any sale transactions contemplated under the Bidding Procedures Order and reserves its right to raise additional objections to any specific proposed transaction.

Respectfully submitted,

*/s/ Brian L. Greenert*
Brian L. Greenert
Assistant Counsel
PA ID No. 321210
Southwest Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA  15222-4745
412-442-4262
bgreenert@pa.gov

David N. Smith
Assistant Counsel
PA ID No. 314504
Southcentral Office of Chief Counsel

Robert McAteer
Assistant Counsel
PA ID No. 83029
General Law Division

**COUNSEL FOR COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Dated: February 24, 2025