# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | Case No.: 25-70001-JAD |
| **WILSON CREEK ENERGY, LLC,** *et al.*,[1] | Chapter 11 |
| Debtors. | Jointly Administered |
| | Doc. No.: |
| **WILSON CREEK ENERGY, LLC,** *et al.*, Movant, | Related to Document No. |
| v. | Hearing Date: |
| **LCT ENERGY, LP,** Respondent. | Hearing Time: |
| | Response Deadline: |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER:
(I) COMPELLING COMPLIANCE WITH BIDDING PROCEDURES AND
CONFIDENTIALITY AGREEMENT; (II) COMPELLING DESTRUCTION OF ALL
CONFIDENTIAL INFORMATION OBTAINED BY LCT ENERGY, LP, PURSUANT
TO CONFIDENTIALITY AGREEMENT; AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, file their emergency motion (the "Motion") seeking the entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) compelling compliance with the Bidding Procedures and Confidentiality Agreement (each as defined herein); (ii) compelling destruction of all Confidential Information (as defined herein) obtained by LCT Energy, LP ("LCT") pursuant to the duly executed Confidentiality Agreement (as defined herein); and (iii) granting related relief. In support of this

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Wilson Creek Energy, LLC (6202); Wilson Creek Holdings, Inc. (7733); Maryland Energy Resources, LLC (5299); Mincorp Acquisition Corp. (4858); Mincorp Inc. (5688); PBS Coals, Inc. (2413); Roxcoal, Inc. (3768); Quecreek Mining, Inc. (1745), Croner, Inc. (0529); Elk Lick Energy, Inc. (8551); and Corsa Coal Corp. (0027). The Debtors' address is 1576 Stoystown Road, Friedens, Pennsylvania 15541.

Motion, the Debtors rely upon: (i) the *Declaration of Kevin Harrigan in Support of the Debtors' Emergency Motion for Entry of an Order: (I) Compelling Compliance with Bidding Procedures and Confidentiality Agreement; (II) Compelling Destruction of All Confidential Materials Obtained by LCT Energy, LP, Pursuant to Confidentiality Agreement; and (III) Granting Related Relief* (the "Harrigan Declaration") attached hereto as **Exhibit B**. In support of the Motion, the Debtors further aver as follows:

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue of these Chapter 11 Cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Motion are sections 105(a) and 363 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), and Rules 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Procedural History

4. On January 6, 2025 (the "Petition Date"), each of the Debtors commenced the above-captioned jointly administered cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 17, 2025, the Office of the United

2

States Trustee for Region Three (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee").

5.  A detailed description of the Debtors, their businesses, and the facts and circumstances surrounding the Debtors' filing of these Chapter 11 Cases are set forth in greater detail in the *Amended Declaration of Kevin Harrigan, President and Chief Executive Officer of Wilson Creek Energy, LLC and its Affiliated Debtors in Support of Chapter 11 Petitions and First Day Motions* [Doc. No. 51-1] (the "First Day Declaration").

**Background Relevant to this Motion**

6.  The Debtors commenced these Chapter 11 Cases on the Petition Date to maximize the value of their operations and, in turn, the recoveries to key stakeholders and creditors in these Chapter 11 Cases. In furtherance of this overall goal, the Debtors filed their *Motion for Entry of Orders (A) Approving Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (C) Authorizing the Debtors to Designate Stalking Horse Bidder and Approving Proposed Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve Sale of the Debtors' Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* [Doc. No. 116] (the "Sale Motion"), which sets forth the terms and conditions upon which the Debtors are advancing the sale of substantially all of their assets with the goal of maximizing the value of their estates.

7.  By Order dated January 28, 2025 [Doc. No. 193] (the "Bid Procedures Order"), this Court approved the proposed process through which the Debtors intend to solicit bids for all or

3

substantially all of their assets for sale, including the Debtors' proposed Bidding Procedures.[2] In accordance with the Bidding Procedures and with the assistance of their professionals, the Debtors identified certain strategic industry players that may have an interest in purchasing some or all of the Debtors' assets. Without solicitation, the Debtors were contacted by LCT (through its counsel) expressing an interest in purchasing the Debtors' assets.

8. In accordance with the Bidding Procedures, the Debtors and LCT entered into a *Confidentiality Agreement* (the "Confidentiality Agreement") in order to permit and govern the exchange of information in connection with LCT conducting due diligence. A true and correct copy of the Confidentiality Agreement is attached as Exhibit A to the Cease and Desist (as defined herein).

9. As set forth in the Confidentiality Agreement:

> For the sole purpose of [LCT]'s consideration of a possible acquisition of certain assets of [the Debtors] (the "**Purpose**"), [the Debtors] may disclose to [LCT], or [LCT] may otherwise receive access to, Confidential Information (as defined [in the Confidentiality Agreement]). [LCT] **shall use the Confidential Information solely for the Purpose** and, subject to Section 3, shall not disclose or permit access to Confidential Information other than to its employees, officers, directors, attorneys, accountants and financial advisors (collectively, "**Representatives**") who: (a) need to know such Confidential Information for the Purpose; (b) know of the existence and terms of this [Confidentiality] Agreement; and (c) are bound by the confidentiality obligations no less protective of the Confidential Information than the terms and conditions contained herein.

*See* Confidentiality Agreement, ¶ 1 (emphasis added).

10. The Confidentiality Agreement further provides,

> "**Confidential Information**" means all non-public, proprietary, or other confidential information of [the Debtors], in oral, visual, written, electronic, or other tangible or intangible form, whether or not marked or designated as "confidential[]", including without limitation: (a) all information concerning the [Debtors'] and their customers', suppliers', and other third

---

[2] Capitalized terms not otherwise defined herein shall have the same definitions as ascribed to them in the Sale Motion or the Bidding Procedures Order, as applicable.

4

parties' past, present, and future business affairs including, without limitation, finances, customer information, supplier information, products, services, organizational structure and internal practices, forecasts, sales and other financial results, records and budgets and business, marketing, development, sales and other commercial strategies…

*See* Confidentiality Agreement, ¶ 2.

11. The Confidentiality Agreement also provides,

On the expiration of this Agreement or otherwise as the [Debtors'] request, [LCT] shall promptly, at [the Debtors'] option, either return to [the Debtors] or destroy all Confidential Information in [LCT's] and [LCT's] Representatives' possession other than Notes, and destroy all Notes, and certify in writing to [the Debtors] the destruction of such Confidential Information.

*See* Confidentiality Agreement, ¶ 4.

12. Further, the Confidentiality Agreement provides,

The rights and obligations of the parties under this [Confidentiality] Agreement expire three (3) years after the Effective Date; *provided* that with respect to Confidential Information that is a trade secret under the laws of any jurisdiction, such rights and obligations will survive such expiration until, if ever, such Confidential Information loses its trade secret protection other than due to an act or omission of [LCT] or [LCT's] Representatives.

*See* Confidentiality Agreement, ¶ 7.

13. Finally, the Confidentiality Agreement provides,

**[LCT] acknowledges and agrees that any breach of this [Confidentiality] Agreement will cause injury to [the Debtors] for which money damages would be an inadequate remedy and that, in addition to remedies at law, [the Debtors are] entitled to equitable relief as a remedy for any such breach and [LCT] further agrees to waive any requirement for the security or posting of any bond in connection with such remedy.**

*See* Confidentiality Agreement, ¶ 8 (emphasis added).

14. In reliance upon LCT's execution of the Confidentiality Agreement and the Bid Protections Order, the Debtors granted LCT access to the Debtors' virtual data room (the "VDR")

that the Debtors populated with a plethora of Confidential Information including, but not limited to, information relating to the Debtors' businesses, financials, projections, mining plans, customer and vendor relationships, pricing and cost information, and other proprietary and commercially sensitive information, all of which is Confidential Information under the Confidentiality Agreement.

15. Shortly after the Debtors provided LCT with the Confidential Information, and to the Debtors' genuine surprise, the Debtors were informed by certain of their largest customers and significant business partners that LCT representatives were conveying that the Debtors' business was spiraling, and a shutdown of their operations was imminent. Equally surprising was the fact that LCT also advised certain of the Debtors' trucking vendors that, if they wanted to continue hauling coal in the area, they had to devote more resources to hauling LCT's coal.

16. On January 30, 2025 at 11:17 am, counsel for the Debtors spoke with counsel for LCT about the LCT communications and respectfully requested that counsel for LCT advise his client that such action cease. Despite such effort, LCT's harmful communications in violation of the Confidentiality Agreement continued.

17. Thereafter, on February 5, 2025, the Debtors issued a cease and desist letter (the "Cease and Desist") to LCT and revoked LCT's access to the VDR. A true and correct copy of the Cease and Desist is attached hereto, made part hereof, and marked **Exhibit C**.

18. Upon receipt of the Cease and Desist, LCT provided a written response on February 7, 2025, wherein LCT disputed the position of the Debtors in the Cease and Desist, but otherwise agreed to cease any communications with the Debtors' customers and vendors relating to these Chapter 11 Cases. Relying in good faith upon LCT's acknowledgment and agreement to discontinue any communications with the Debtors' customers and business counterparties about

6

their sale process and confidential information, on Saturday, February 8, 2025, the Debtors reinstated LCT's access to the VDR, as LCT led the Debtors to believe that LCT had a genuine interest in submitting a bid and would act in good faith in that regard.

19. On February 10, 2025, the first business day *after* regaining access to the VDR, LCT requested additional information be added to the VDR as part of its "due diligence." This request from LCT notably included, *inter alia*, trucking servicer lists and rates/costs for transportation from some of the Debtors' mines to the loading docks. The Debtors uploaded the additional Confidential Information requested by LCT on February 10, 2025.

20. Following LCT regaining access to the VDR, the Debtors were advised by one of their two largest customers that LCT's derogatory comments relating to the Debtors' operations continued. Additionally, the Debtors understand that LCT raised the rates it was willing to pay to trucking companies that haul coal for the Debtors above the rates being paid by the Debtors, including trucking companies whose identities and rate structures were disclosed in response to LCT's February 10, 2025 due diligence request.

21. LCT's actions concerned the Debtors because while LCT was a purported bidder, it also is a competitor in the marketplace. Harmful communications with one of the Debtors' two largest customers and disruption in the means of transportation can impair and impact cash flow and by extension compliance with covenants associated with the Debtors' DIP financing. Additionally, impairment to operational cash flow can negatively impact the going concern sale value of the Debtors, creditor recoveries and the Debtors' restructuring efforts as a whole. In light of the circumstances, and following discussion with the Consultation Parties, the Debtors in an exercise of their business judgment sent LCT and counsel a *Notice of Disqualification and Preservation Notice* dated February 14, 2025 (the "Disqualification Notice") at 7:28 pm that same

day, a true and correct copy of which is attached hereto, made part hereof, and marked as **Exhibit D**. Notably, as of that date, the Debtors had received no written offer or indication of interest (or even a verbal offer) from LCT to purchase the Debtors' assets notwithstanding the deadline to submit stalking horse bids had passed. The Debtors received no objection to issuing the Disqualification Notice from the Consultation Parties.

22. The Debtors are investigating the financial impact of the aforementioned actions and reserve all rights with respect thereto. The Debtors have learned that multiple trucking companies have diverted transportation services from the Debtors to LCT, which negatively impacts the Debtors operations.[3] At this stage, the Debtors are seeking to mitigate further damage, which is the primary reason they have filed this Motion.

## Relief Requested

23. The Debtors respectfully request that this Court enter the Proposed Order: (i) compelling compliance with the Bidding Procedures and Confidentiality Agreement; (ii) compelling LCT to destroy any information obtained from the VDR, and verifying such destruction within three (3) business days of the entry of an order granting the relief requested herein; and (iii) granting such other relief as is deemed just and proper.

## Legal Basis for Relief Requested

### A. *Compelling Compliance with Bidding Procedures*

24. It is fundamental that a court has the inherent authority to interpret and enforce its own orders. *See In re TWA Inc. Post Confirmation Estate*, 2007 Bankr. LEXIS 3182, *8-10 (Bankr. Del. 2007); *see also, Heartland Hospital v. Thompson*, 328 F. Supp. 2d 8, 11-12 (D.D.C. 2004), *aff'd*, 415 F.3d 24 (2005) ("Within a court's power to administer its decrees is the power to construe

---

[3] The Debtors reserve all rights with respect to recourse relating to such trucking companies.

8

and interpret the language of the judgment"); *Chandler v. State of Oklahoma ex rel. Oklahoma Tax Commission (In re Chandler)*, 251 B.R. 872, 877 fn. 5 (B.A.P. 10th Cir. 2000) ("[I]t is well-settled that bankruptcy courts have the power to interpret and enforce their orders."); *Travelers Indem. Co. v. Bailey*, 577 U.S. 137 (2009) (holding that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"); *In re Trans World Airlines, Inc.*, 278 B.R. 42, 49 n. 16 (Bankr. D. Del. 2002) ("Core proceedings under § 157(b)(2)(N) are those which arise from, concern, or have impact on 'orders approving the sale of property'").

25. We need not belabor the fact that a bankruptcy court is, after all, a court of equity. *See In re Beck Indus.*, 605 F.2d 624, 634 (2d Cir.1979). It is a longstanding principal that, "[i]n the exercise of its equitable jurisdiction ... [the Court] has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 307–08, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939). As a result, a bankruptcy court has broad remedial powers with which to fashion relief for parties. *See In re Beck Indus.*, 605 F.2d at 637.

26. The Bidding Procedures, which this Court approved through the entry of the Bid Procedures Order, provide:

> Each Potential Bidder agrees to use, and to instruct its advisors and representatives to use, any of the Debtors' confidential information only in connection with the formulation of a bid(s) during the bidding process or in accordance with the terms of any applicable confidentiality agreement.

*See* Bidding Procedures, p. 2 (Bid Procedures Order, CM/ECF p. 21 of 95).

27. Furthermore, the Confidentiality Agreement was entered into pursuant to the Bid Procedures Order and its terms are consistent with the confidentiality provisions contained in said order (as noted in the preceding paragraph).

28. The Court also explicitly retained jurisdiction with respect to all matters arising

from or related to the implementation or interpretation of the Bid Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Procedures and the implementation of the Bid Procedures Order. *See* Bid Procedures Order ¶ 20; *see also, In re Nortel Networks Corp.*, 445 B.R. 370, 375 (Bankr. D. Del. 2011) (order with similar language "compels the Court to act in its supervisory and enforcement roles ...")

29. Here, the Debtors submit that, in violation of the Confidentiality Agreement and the Bidding Procedures, LCT has used Confidential Information not for the Purpose (as defined in the Confidentiality Agreement), but in furtherance of its own interests to the significant detriment of the Debtors' estates.

30. While the Debtors are still investigating the true extent of the damage caused by LCT's conduct, the Debtors have already identified what may be millions of dollars in damages to their estates based on LCT's actions.

31. While the Debtors reserve all rights with respect to filing an adversary proceeding against LCT to recover damages that the Debtors will establish at trial, the Debtors seek an order from this Court compelling LCT to comply with the Bidding Procedures and Confidentiality Agreement, and to discontinue any use or disclosure of Confidential Information for any reason whatsoever, as there is no longer a Purpose based on the Debtors' disqualification of LCT as a Potential Bidder.

### B. *Compelling Destruction of Confidential Information*

32. As discussed above, this Court has broad powers to enforce and interpret its own orders, including the Bid Procedures Order.

33. In connection with the Bid Procedures Order, LCT and the Debtors entered into the Confidentiality Agreement, which provides, *inter alia*:

> On the expiration of this Agreement or otherwise as the [Debtors'] request, [LCT] shall promptly, at [the Debtors'] option, either return to [the Debtors] or destroy all Confidential Information in [LCT's] and [LCT's] Representatives' possession other than Notes, and destroy all Notes, and certify in writing to [the Debtors] the destruction of such Confidential Information.

See Confidentiality Agreement, ¶ 4.

34. As of the date hereof, LCT has not provided a written certification that the Confidential Information has been destroyed. Given LCT's actions to date, the Debtors believe it is prudent and necessary to obtain a court order directing compliance to mitigate further damage to the Debtors' sale process and the bankruptcy estate.

35. Accordingly, the Debtors also seek an order from this Court compelling LCT to destroy all Confidential Information acquired from the VDR and directing LCT to provide a written verification of the same to the Debtors within three (3) business days of the entry of an Order granting the relief requested in this motion.

## Request for Emergency Hearing Pursuant to Local Rule 9013-2

36. The Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit E**, scheduling a hearing to consider the relief requested herein on an emergency basis.

37. The Debtors submit that an emergency hearing is necessary because, given the current status of these Chapter 11 Cases and the fact that LCT's conduct is actively disrupting the Debtors' operations and ongoing sale efforts, allowing this conduct to continue without redress will cause irreparable harm to the Debtors' estates and materially impair the Debtors' ability to maximize the value of their estates.

38. As described above, the Debtors submit that LCT's conduct has already caused material harm to the Debtors' operations and likely the sale process. Absent an emergency hearing

to curtail this conduct, the Debtors could face additional impairment to operations and its ability to both advance its restructuring efforts (by sale process or otherwise) and comply with the covenants associated with its DIP financing facility.

39. The Debtors submit that any harm that befalls any party in interest, including LCT, by scheduling an emergency hearing on this Motion pales in comparison to the ongoing damages incurred by the Debtors on a daily basis as a result of LCT's conduct.

40. The need for an emergency hearing has not been caused by the Debtors or their counsel but has been brought about solely by circumstances beyond their control.

## Reservation of Rights

41. The Debtors expressly reserve any and all rights, claims, causes of action, and remedies they have or may have against LCT, under the Bankruptcy Code or applicable non-bankruptcy law, including but not limited to arising from or relating to its breach of the Confidentiality Agreement, its violation of the Bidding Procedures, and its actions performed within the Debtors' sale process. Nothing herein is or shall be construed as a waiver or release of any of the foregoing, as the Debtors expressly reserve all rights, claims, and causes of action they have or may have against LCT at law, in equity, or otherwise.

## Notice

42. In accordance with the *Revised Order Establishing Certain Notice, Case Management and Administrative Procedures as Well as Granting Related Relief* [Docket No. 39] (the "Case Management Order"), notice of this Motion has been given to (a) counsel for LCT, (b) all parties on the Master Service List (as defined in the Case Management Order), and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

**No Prior Request**

43. No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these Chapter 11 Cases.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter the Order, substantially in the form attached hereto as **Exhibit A**, (x) compelling LCT to comply with the Bidding Procedures and Confidentiality Agreement, (y) compelling LCT to destroy all Confidential Information and provide verification of such destruction within three (3) business days of the entry of an order granting the relief requested in this Motion, and (z) granting such other relief as this Court deems just and proper, and (ii) scheduling a hearing on the Motion on an emergency basis.

Respectfully submitted,

Dated: February 25, 2025

**RAINES FELDMAN LITTRELL, LLP**

By:/s/ *Michael J. Roeschenthaler*
Michael J. Roeschenthaler (PA ID No. 87647)
Kenneth J. Lund (PA ID No. 63468)
Mark A. Lindsay (PA ID No. 89487)
Daniel R. Schimizzi (PA ID No. 311869)
11 Stanwix Street, Suite 1100
Pittsburgh, PA 15222
Telephone: 412-899-6460
Email: mroeschenthaler@raineslaw.com
klund@raineslaw.com
mlindsay@raineslaw.com
dschimizzi@raineslaw.com

*Counsel to the Debtors and*
*Debtors in Possession*